UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                           Case No: 8:20-cr-252-WFJ-TGW-1

DAVION RIVERS,

    Defendant.
_____/

## ORDER DENYING MOTIONS TO SUPPRESS
## ITEMS SEIZED IN SEARCHES

These matters come before the Court upon Defendant's two motions to suppress. At Dkt. 55, Defendant seeks to suppress a gun seized from his person at his arrest. At Dkt. 58, Defendant also seeks to suppress a spent shotgun shell seized from his residence pursuant to a state search warrant. The Government filed responses at Dkts. 72 and 73. The Court held an evidentiary hearing and took argument on September 30, 2021. The parties agreed at the hearing that the record was sufficient. Upon consideration, the Court denies both motions.

### BACKGROUND

On August 10, 2020, two police officers from the Bradenton Police Department responded to a 911 call regarding a battery of the caller's juvenile son. Dkt. 55-1 at 1. The caller reported that a man sitting outside of a house struck her

1

son while he was walking home with a friend. Dkt. 55 at 2; Dkt. 72 at 1. The two officers interviewed the juvenile, who stated that a black male with dreadlocks approached him in the street at around 9:00 pm and repeatedly struck him in the head, telling him to get off the block. Dkt. 55 at 2; Dkt. 72 at 2. The juvenile told the officers that the battery took place in the vicinity of a two-story house in the 1900 block of 11th Avenue East. Dkt. 72 at 2. The only two-story house in the vicinity with which the responding officers were familiar was located at 1010 20th Street East and had a rear driveway entrance on the 1900 block of 11th Avenue East. Dkt. 72 at 2; Dkt. 89-1. The front entrance of the home on 20th Street East can be seen in the photograph at Dkt. 55 at 3. The Appendix attached to this order is a photograph of the rear entrance on 11th Avenue East. Photographs of the 11th Avenue East entrance can also be found in the record at Dkt. 55 at 4 and Dkt. 89-1.

The Court took the evidentiary testimony that the parties wanted, which consisted only of the examination of Officer Morningstar, one of the two Bradenton Police Department officers who responded to the 911 call. Officer Morningstar testified that he was familiar with both the neighborhood and the two-story house located at 1010 20th Street East. He stated that he previously conducted juvenile curfew checks at this house and had once worked a fire there. The record shows that the 1010 20th Street East entrance of the house sits behind a padlocked fence displaying a "No Trespassing" sign. Dkt. 55 at 3. The home's

mailbox is located behind the fence, with the mail receptacle sticking through the fence and only accessible from the street.  Dkt. 55 at 3.  Officer Morningstar explained credibly that the rear driveway entrance to the house located on 11th Avenue East was the entrance that he customarily used when he attended on the property in the past.  He testified that, on August 10, 2020, he and the other officer went to the home's 11th Avenue East entrance to investigate the reported battery.

      The 11th Avenue East side of the home sits behind a short gate.  Officer Morningstar testified that he and the second officer approached the house by walking through this gate and up the driveway.  Officer Morningstar stated that the gate was open when they arrived at the house.  As shown in the Appendix, the gate's opening is roughly 20 feet wide, possibly wider, and spans across the driveway.  Residents of the home appear to park both in the driveway and on the curb of 11th Avenue East.  Dkt. 55 at 4; Dkt. 72-1.  Residents also seem to place their garbage cans on 11th Avenue East.  Dkt. 72-1.  The photos in the record show several "No Trespassing" signs posted on a tree in the backyard behind the rear gate.  Dkt. 55 at 4; Dkt. 72-1.  Officer Morningstar stated that he did not see these signs because he approached the home at night.  No lights or other sources of illumination can be seen in the photographs of the gate area.  Dkt. 55 at 4; Dkt. 72-1.  Officer Morningstar's testimony in this regard was credible and without impeachment.

Upon approaching the house, the officers encountered Defendant, who matched the juvenile's fairly generic description of his attacker. Defendant was asleep on a wooden porch or deck that sits at the top of the driveway by the home's back door. The deck was raised three steps off the ground and visible from the street. The deck did not have a roof, door, or walls. Rather, the deck was open and unenclosed. A photograph of the deck can be found at Dkt. 55 at 4. Officer Morningstar testified that he and the other officer did not step on or enter the deck. This is uncontested. Officer Morningstar stated that he and the other officer raised their voices to wake Defendant. When he awoke, Defendant quickly and brusquely told the officers to leave the property.

Officer Morningstar testified without contradiction that they then began walking back down the driveway to leave. According to Officer Morningstar, Defendant was belligerent and followed the officers as they walked to the street. The officer testified that when they reached 11th Avenue East, Defendant pushed him in the chest. As Defendant turned around after pushing Officer Morningstar, the officer saw the butt of a firearm sticking out of Defendant's pants pocket. Officer Morningstar testified that they arrested Defendant in the street at roughly 10:00 pm for the felony offense of battery on a law enforcement officer. The sole testimony offered on this encounter was given by Officer Morningstar, and he was credible.

Upon placing Defendant under arrest, the officers conducted a pat-down of Defendant's person. In Defendant's pants pocket was a revolver called a "Taurus Judge," which is chambered to shoot .410-gauge shotgun shells. Three days after Defendant's arrest, a detective swore out an affidavit to obtain a search warrant for Defendant's home based on Defendant's possession of a firearm as a convicted felon. Dkt. 58-1 at 1–5. The warrant application sought to search for "firearms" and "any and all ammunition, magazines, spent casings, targets, or anything else used in conjunction with a firearm." Dkt. 58-1 at 5.

In his affidavit, the detective provided a description of Defendant's August 10th arrest for battery on a law enforcement officer and possession of a handgun as a convicted felon. Dkt. 58-1 at 2. He related the circumstances of Defendant's criminal history at the house and noted that Defendant had exercised dominion over the property by expelling the officers upon awakening. Dkt. 58-1 at 2. The affidavit stated that Defendant had two prior felony convictions: one for carrying a concealed weapon and one for possession of a firearm or ammunition. Dkt. 58-1 at 2. The affiant detective noted that Defendant spent time in federal prison for sales of fentanyl/heroin and a violation of probation for that sales charge. Dkt. 58-1 at 2. Defendant had been released from federal prison ten days before his August 10th arrest. Dkt. 58-1 at 2. The detective also included that, after Defendant's arrest, the juvenile battery victim positively identified Defendant from a photo as his

attacker.  Dkt. 58-1 at 2.

Further, the detective established his extensive background in street crime and gang-related investigations in the affidavit.  Dkt. 58-1 at 3−4.  The detective stated, *inter alia,* that based on his extensive experience, "it is known that people who own and/or possess firearms commonly have spare or extra ammunition with in [sic] their residence" and that "criminals who possess firearms typically possess ammunition for those firearms, for the former is of little value without the latter."  Dkt. 58-1 at 4.  Citing his experience, the detective stated that "a criminal who has been observed in possession of a single firearms is likely to have that firearm, as well as additional firearms, stored in his home and/or his vehicle."  Dkt. 58-1 at 4.

On August 14, 2020, a Florida circuit judge issued the warrant to search the house for firearms, ammunition, spent casings, etc., as requested.  Dkt. 58-1 at 6−7.  Law enforcement executed the search of Defendant's home on August 18, 2020.  Dkt. 58-1 at 8.  They seized one spent .410-gauge shotgun shell from the house.  Dkt. 58-1 at 8.  Drug paraphernalia, not relevant here, was also seized.  Dkt. 58-1 at 8.

## ANALYSIS

The United States Supreme Court has recognized an implicit license regarding homes that "permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger

longer) leave." *Florida v. Jardines,* 569 U.S. 1, 8 (2013).  Law enforcement officers, like any other citizen, may take advantage of this implied license. *Kentucky v. King,* 563 U.S. 452, 469 (2011); *United States v. Taylor,* 458 F.3d 1201, 1204 (11th Cir. 2006).  As the Eleventh Circuit held in *Taylor*, "officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may."  458 F.3d at 1204.

     Here, the police officers acted within the scope of this implied license by entering an open and customary entrance to the property and leaving when asked.  If one examines the property, one can see that the front of the house is located at 1010 20th Street East.  However, the front door of a home is not always its customary entrance.  *See United States v. Shuck*, 713 F.3d 563, 568 (10th Cir. 2013) ("[T]he evidence showed that by approaching the back door as they did, the officers used the normal route of access, which would be used by anyone visiting [the home]."); *See also United States v. Thomas*, 430 F.3d 274, 280 (6th Cir. 2005) (finding no Fourth Amendment violation by officers who approached the back door of defendant's home, as it was customarily used as the home's entrance).  The front yard is surrounded by a padlocked fence displaying a "No Trespassing" sign.  The home's mailbox sits behind this fence and is accessible only from the street, through the fence.  This front portion of the house facing 20th Street East may not

be a customary entrance and egress, as one would have to alight from one's car and open the padlocked gate to access the path to the front door.

Conversely, the photographs in evidence tend to show that a customary entrance and egress to this house is on the 11th Avenue East side of the property. The record shows that vehicles—several of them—have off-street parking at the house's rear entrance on 11th Avenue East. The photos provided by both the Government and Defendant show the rear entrance gate to be open at least 20 feet wide across the driveway. Based on the photographs and testimony, this open entrance to the property appears to be frequently used. This gate is also notably shorter than the fence surrounding the front of the home. Although not entirely clear, it appears that the residents of Defendant's house place their garbage cans on the street at 11th Avenue East. The photo of the locked, fenced yard on the house's 20th Street East side, on the other hand, suggests that residents would neither place their garbage cans there nor regularly come and go by that entrance.

The Court finds that this customary entrance to the home off 11th Avenue East was not blocked or closed off in such a way that the police's implied license to conduct a "knock and talk" had been revoked. In investigating the reported battery of the juvenile, the officers entered through the home's open gate on 11th Avenue East just as Officer Morningstar had previously done when visiting the home on prior occasions. Additionally, the wooden deck where the officers first

8

encountered Defendant does not appear to be curtilage of the house.[1]  Even if this open porch amounted to curtilage, Officer Morningstar testified without contradiction that the officers did not enter or step upon it.  Moreover, Officer Morningstar stated that he and the other officer immediately departed when they were told to do so by Defendant.  Accordingly, the motion to suppress the gun seized from Defendant's pocket is denied.

While unnecessary to the Court's ruling on this motion to suppress, other factors support the seizure of the firearm.  For example, a police officer with probable cause to arrest an individual may conduct a full search of the arrestee's person.  *United States v. Robinson*, 414 U.S. 218, 224 (1973).  Here, the officers seized the firearm after lawfully arresting Defendant for battery on a law enforcement officer.  The Court also notes that both the battery and arrest appear to have taken place in the public street of 11th Avenue East after Defendant followed the officers off his property.

Turning to Defendant's second motion, Defendant seeks to suppress the spent .410 shotgun shell found in the house pursuant to the search warrant.  Defendant argues that the detective's affidavit "contains no facts linking the

---

[1] The deck, in the Court's view, is too open to be curtilage.  Dkt. 55 at 4.  It is open, observable by people passing by on the street, and does not seem to "harbor[] the intimate activity associated with the sanctity of a man's home and the privacies of life." *United States v. Dunn,* 480 U.S. 294, 300 (1987); *United States v. Stephen,* 823 F. App'x 751, 754−55 (11th Cir. 2000).

firearm found on Mr. Rivers to the Residence" and "contains various forms of speculation." Dkt. 58 at 3. Defendant contends that the affidavit provides "no specific facts that would provide a 'fair probability' that there would be additional firearms in the Residence or . . . ammunition in the Residence." Dkt. 58 at 3. The Court disagrees and finds that the affidavit sufficiently demonstrated probable cause that firearms or gun accoutrements would be present on the property.

A search warrant is supported by probable cause when the totality of the circumstances allows one to conclude that there is a "fair probability" that evidence of a crime will be found in a particular place. *United States v. Lebowitz*, 676 F.3d 1000, 1010−11 (11th Cir. 2012). Here, there was a fair probability on the totality of the circumstances that ammunition (spent or otherwise) or a gun, gun case, target, or other firearm-related item would be found in Defendant's home. In fact, it was highly likely. With the warrant application submitted just three days after Defendant committed the crime of felon in possession outside of his home, the "pc" was fresh. The search warrant was also timely executed. That Defendant, who asserted armed authority over the property where he resided immediately before his arrest, would likely have some evidence therein of further firearms or ammunition possession was sufficiently established. As the detective explained in his affidavit, based on his extensive training and experience in street crime and gang investigations, he had probable cause to believe Defendant possessed

10

firearms, ammunition, or other related items in the home. The odds were more than fairly probable that this man had some sort of firearm-related item at his residence. *See United States v. Reeves,* 647 F. App'x 942, 945−46 (11th Cir. 2016) (probable cause supported warrant to search defendant's apartment for firearm-related evidence, as defendant was a convicted felon observed in proximity to a firearm within his apartment).

The Court's finding that the warrant was supported by probable cause resolves this matter. However, even if probable cause were found to be lacking, it could not be lacking by much. The good faith exception would apply. *United States v. Goldstein,* 989 F.3d 1178, 1196 (11th Cir. 2021) ("When law enforcement officers act in good faith and in reasonable reliance upon a judge's order, exclusion is not warranted because there is no unlawful conduct to deter."). The motion at Dkt. 58 is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motions to suppress at Dkts. 55 & 58 are **DENIED**. This case will be tried in December 2021.

**DONE AND ORDERED** at Tampa, Florida, on October 14, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record